**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

Civil Action No. 5:00 CV $\mathcal{S}$-V

| | |
|---|---|
| MICHAEL BAILEY, JANE BAILEY and BILLY BAILEY, | ) ) ) ) |
| Plaintiffs, | ) ) |
| D.H. KENNEDY, individually and officially, D.B. WHITLEY, individually and officially, MIKE CRISP, individually and officially, and THE CITY OF HICKORY, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT

NOW COME the plaintiffs, requesting a jury trial, and allege the following against the defendants.

## PARTIES

1.      The Plaintiffs are citizens and residents of Catawba County, North Carolina. Billy and Jane Bailey are the parents of Michael Bailey.

2.      The Defendants, Kennedy, Whitley, and Crisp, upon information and belief, are citizens and residents of Catawba County, North Carolina and at all times relevant to this Complaint were employed as police officers for the City of Hickory and acting within the scope of those duties. Each is sued in his individual capacity under 42 U.S.C. § 1983 and in his individual and official capacities under North Carolina law.

3. The Defendant City of Hickory is a municipal corporation organized under the laws of North Carolina and capable under state statute of bringing and defending lawsuits, including claims involving its police department. It is sued as *respondeat superior* on the state law claims, as the individual defendants were acting as agents of City in their capacity as police officers. On information and belief, the City of Hickory had purchased insurance, either by contract with an insurance company or by participation in an insurance risk pool, that covers the claims raised in this action and has thereby waived any defense of sovereign or governmental immunity. Further, such immunity does not apply to intentional conduct such as false arrest, false imprisonment and assault raised in this complaint.

## JURISDICTION

4. This matter is properly before the Court under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1988. The Court also has pendent jurisdiction over the state law claims raised in this action. Plaintiff seeks damages in excess of $10,000.00 on each of their state law claims.

## FACTS

### A. The May 27, 1998 Involuntary Commitment

5. In the early afternoon of May 27, 1998, Michael Bailey was alone eating lunch at the residence he shares with his parents Billy and Jane Bailey.

6. Unknown to the Plaintiff, an acquaintance had called the police claiming that the Plaintiff was suicidal.

7. Plaintiff allowed Whitley into the house. Whitley questioned Plaintiff about his state of mind, explaining that someone had reported that he was suicidal, though Whitley did not know who had made the report. Whitely also asked to search the house. Plaintiff calmly

2

answered the officer's questions, explaining that he was simply eating lunch and was not suicidal, and refused permission to search the house without a warrant.

8.    Whitley left and returned about fifteen minutes later with Defendant Kennedy. Michael Bailey answered the door and asked if the officers had acquired a warrant. When the officers admitted they did not have a warrant, Plaintiff asked them to leave and tried to close the door.

9.    Kennedy put his foot in the door to prevent its closing and then forced his way into the house. Whitley followed Kennedy. Plaintiff again asked the defendants to leave and stated that he was going to call his attorney and his father. Plaintiff moved toward the telephone.

10.    Before Plaintiff could reach the telephone, Kennedy grabbed Plaintiff, put him in a choke-hold and slammed Plaintiff's face onto the counter, opening a wound in Plaintiff's mouth, and then took Plaintiff down to the floor.

11.    Other officers, including Crisp, arrived and went inside the Plaintiff's residence. Once on the floor, Defendants Kennedy, Whitley and Crisp, as well as other unidentified officers, began hitting and kicking Plaintiff. The officers handcuffed and put ankle shackles on the Plaintiff and then dragged him by his feet out of the house and across the asphalt driveway toward several police vehicles parked in the driveway.

12.    A neighbor telephoned Billy Bailey, the father of Michael Bailey and owner of the residence, at work to tell him the police were at his home. Billy Bailey arrived home in time to find his son -- handcuffed, shackled, and bleeding -- face down in the driveway, surrounded by police. He then watched as his son was lifted and forced into one of the police cars.

13.    The officers took Michael Bailey to Frye Regional Medical Center where he remained restrained in handcuffs and shackles for approximately four hours.

3

14.     After the police left the residence, Plaintiff Billy Bailey went into his house. He

saw the disorder created by the arrest and cleaned his son's blood from the floor before

proceeding to the hospital.

15.     At the hospital and later that day, Defendant Kennedy falsely told various persons

that Plaintiff had assaulted the officers.

16.     A Dr. Charles McKaraher examined Michael Bailey at 3:05 p.m. His notes show

that Michael Bailey tried to explain that the officers had attacked him. McKaraher prepared a

physician's petition for involuntary commitment. The petition falsely claimed that the father,

Billy Bailey, sought the commitment. Billy Bailey refused to sign or agree to any such request.

17.     Defendant Kennedy then went before a magistrate to obtain an order, pursuant to

G.S. § 122C-261, to arrest Michael Bailey and take him before a physician for an examination.

Kennedy presented a sworn affidavit falsely stating, among other misrepresentations, that

Plaintiff was a danger to himself and to others.

18.     The magistrate then issued a standard order (form AOC-SP-302) authorizing that

Plaintiff could be arrested and then brought to a physician or psychologist for examination. The

order indicates that it was issued at 4:40 p.m., more than two hours *after* Michael Bailey's arrest.

19.     The Return of Service on the order was then marked deliberately and falsely that

Plaintiff was arrested at 4:30 p.m. and presented to Dr. McKaraher for examination at 5:00 p.m.

20.     A Catawba County Sheriff Deputy picked up Michael Bailey at Frye Medical

Center at approximately 7:00 p.m. and transported him to Broughton Hospital in Burke County,

where he arrived at 7:30 p.m.

21.     On the commitment form filled out for admission at Broughton, D.H. Kennedy

was now listed as the Petitioner, rather than the father, Billy Bailey. On information and belief,

4

Kennedy drove separately to Broughton, where he informed the admitting physician falsely that Michael Bailey had assaulted police officers when the officers came to arrest him. Upon this information, that physician admitted Plaintiff to the hospital, finding that Bailey was dangerous to himself and others.

22. Plaintiff spent three days in Broughton Hospital in intense pain from injuries from his arrest, including damage to his shoulders and ribs. During his stay, Plaintiff suffered from the humiliation and horror of involuntary commitment to a state hospital ward populated with patients suffering from severe mental health problems. While at Broughton, Bailey received some care for his cuts and bruises, but no treatment for what proved to be a separated shoulder and fractured rib. After a doctor determined that Bailey exhibited no danger to himself or others, he was given the option of being released to an outpatient program, or remaining another week pending a commitment hearing. He agreed to the release.

23. After his release, Plaintiff met with the patient advocate at Broughton on or about June 2 to discuss what had happened. Upon reviewing the file, the advocate believed that the commitment was unlawful, as Plaintiff had been arrested and examined prior to issuance of the magistrate's custody order. Plaintiff asked the advocate to challenge the commitment. On June 4, 1998 the advocate moved to dismiss the involuntary commitment petition initiated by Defendant Kennedy on the ground that the Defendant had not followed statutory procedures.

24. A state district court judge heard the motion and agreed that the statutory requirements had been violated. He found that Plaintiff had been arrested and examined by a doctor before a magistrate had issued an order authorizing his arrest and examination. The Court dismissed the petition in an order signed on June 4 and filed on June 11, 1998.

5

25.     Over the next few months, Plaintiff could not use his shoulders in the manner he had prior to his arrest, and repeatedly sought treatment for it.

## B. The September 3, 1998 Arrest

26.     On September 3, 1998, Michael was walking home from a bank where he had a disagreement with the teller when she refused to cash a check.

27.     A Sgt. Sigmon approached Plaintiff on the street about one block from the Bailey's house.  Sgt. Sigmon explained that she was responding to a call made by the bank.

28.     Sigmon told Bailey that he was not under arrest, but asked that Plaintiff find someone who would verify that he would not return to the bank that day.  As no one else was at his home, Plaintiff went to a neighbor's house to explain what was going on and asked if she would speak to the sergeant.  While Plaintiff was at his neighbor's house, Defendant Kennedy arrived on the scene.

29.     As Plaintiff and the neighbor approached the two police officers, Kennedy threatened to arrest Plaintiff.  Plaintiff attempted to explain to Kennedy that he and Sgt. Sigmon had already agreed on how to resolve the situation.  Kennedy asked Plaintiff's neighbor if she was the Plaintiff's mother.  When the neighbor responded in the negative, Kennedy physically attacked Plaintiff without provocation or necessity, hitting him under the jaw and in the chest.  Plaintiff backed away in retreat but Kennedy knocked Plaintiff down.  Sgt. Sigmon sprayed pepper spray at both Plaintiff and the shocked neighbor.  Kennedy handcuffed Plaintiff's hands behind his back and jerked his arms, reinjuring Plaintiff's shoulders.

30.     After being placed in the patrol car, Plaintiff complained of the pain in his shoulder and the spray in his mouth. Kennedy laughed at the Plaintiff and placed a mask on him and drove him to Frye Medical Center.

6

31.     Defendant Whitley joined Kennedy at the hospital where the two officers threatened Plaintiff with further harassment in the future.

32.     Doctors noted abrasions of Bailey's chest and arm and then released him back to the police.

33.     Defendant Kennedy then transported Plaintiff to the Hickory Police Department and placed Plaintiff in a holding cell. While in the holding cell, Defendant Crisp came by and told Plaintiff of his participation in the May 27 incident and several times threatened Plaintiff with further physical violence.

34.     Defendant Kennedy retrieved Plaintiff from the holding cell. Defendants Crisp and Kennedy took Plaintiff to the Magistrate, where Kennedy charged Plaintiff with three misdemeanor counts – drunk and disruptive; resist, delay and obstruct; and communicating threats. All three charges were later dismissed. When Plaintiff protested his treatment and asked to call a lawyer, Kennedy and Crisp threw Plaintiff to the ground and beat him. The magistrate then set a bond and Kennedy transported Plaintiff to the Catawba County jail.

35.     Defendant Kennedy stopped the car a few blocks from the magistrate's office to switch another detainee from Kennedy's patrol car to Defendant Crisp's. During the transfer, Crisp again threatened Plaintiff.

36.     After the transfer of the other detainee was complete, Defendant Kennedy continued the trip to the county jail. En route, Kennedy warned Plaintiff that he needed to move out of town.

37.     The injuries sustained in the September arrest and subsequent beating at the police department were examined the following day. A small growth on Plaintiff's abdomen had become inflamed during the beatings and later required surgery for removal. The injury to

7

Plaintiff's shoulder required surgery the following month. He later needed surgery on the other shoulder.

38.     Plaintiff's encounters in May and September 1998 with Defendants Kennedy, Whitley and Crisp have left Plaintiff with scars on his lip, wrists and ankles, a chipped front tooth, and limited use of both of his arms, and suffering emotionally. Because of the injuries to his shoulders from these two arrests, Plaintiff is incapable of performing the kind of work in the timber industry that had provided his living before these incidents.

39.     The Plaintiff and his neighbor later appeared in Court on the three misdemeanors filed by Kennedy against the Plaintiff. The State dismissed the charges.

## FIRST CAUSE OF ACTION (May 27, 1998 --Trespass by Public Officers)

40.     Paragraphs 1 through 39 are incorporated by reference.

41.     The actions on May 27, 1998 constituted trespass by a public officer against the Plaintiff Michael Bailey, including false arrest, false imprisonment and assault. The actions of the Defendants Kennedy, Whitley, Crisp and other unnamed officers in arresting Michael Bailey and taking him to Frye Medical Center without a warrant and prior to issuance of a magistrate's custody order constituted false arrest and false imprisonment. The actions of Kennedy, Whitley, Crisp and the other officers in unlawfully arresting defendant and using excessive force that inflicting serious injury upon the Plaintiff while taking him into custody, constituted assault and battery. Finally, the actions of Kennedy in securing a magistrate's order for arrest after Plaintiff already had been arrested, in making false entries upon the return of service to make that process appear valid, and then falsely stating to the doctors and others that Plaintiff had assaulted police

8

officers and was dangerous, resulted in Plaintiff's involuntary commitment without due process of law, and thus constituted false imprisonment.

42.  In each Aspect of this trespass claim – false arrest, assault, and false imprisonment -- the Defendants were acting within the scope of their employment as police officers for the Defendant City of Hickory. The City is sued for the actions of these officers as *respondeat superior*.

43.  As a result of these actions of the Defendants, the Plaintiff suffered loss of liberty, severe and painful physical and emotional injuries. As a result of his physical injuries, he now cannot perform his normal livelihood. He seeks and is entitled to compensatory damages in excess of $10,000.

44.  The actions of Whitley and Kennedy, in entering the home and arresting the Plaintiff without valid legal process, and those of Kennedy in making false verbal statements and fraudulent entries on legal documents to secure Plaintiff's involuntary commitment, demonstrated a malicious and willful or wanton disregard of Plaintiff's rights. He seeks and is entitled to punitive damages from Kennedy and Whitley to the extent allowed by statute.

## SECOND CAUSE OF ACTION

### (Violation of Michael Bailey's Fourth Amendment Rights, May 27, 1998)

45.  Paragraphs 1 through 44 are incorporated by reference.

46.  The actions of Defendants Kennedy, Whitley and Crisp and unnamed others described herein relating to the May 27, 1998 incident constituted false imprisonment and excessive force and violated the Plaintiff's Fourth Amendment right to be free from unreasonable seizures by the government, a federal protection and applies to the Defendants

through the Fourteenth Amendment. The Defendants violated Plaintiff's federal civil rights while acting under color of state law, making their conduct actionable under 42 U.S.C. § 1983. Defendants are sued under that statute in their individual capacities.

47.     Further, the actions of September 3, 1998 constituted false arrest by Defendant Kennedy and excessive force by Defendants Kennedy and Crisp in violation the Plaintiff's Fourth Amendment right to be free from unreasonable seizures by the government. That Fourth Amendment right is applicable to the actions of the Defendants through the Fourteenth Amendment. The Defendants violated Plaintiff's federal civil rights while acting under color of state law, making their conduct actionable under 42 U.S.C. § 1983. Defendants are sued under that statute in their individual capacities.

48.     As a result of these Fourth Amendment violations, the Plaintiff suffered loss of liberty, severe physical and emotional pain and suffering and unwarranted disruption of his life, including lost income. He seeks compensatory damages in excess of $10,000.00.

49.     The actions of Kennedy and Whitley in May, and those of Kennedy and Crisp in September, evinced a malicious and willful or wanton disregard of the rights of Michael Bailey, for which he seeks and is entitled to punitive damages.

## THIRD CAUSE OF ACTION

### (Violation of Jane and Billy Bailey's Fourth Amendment Rights, May 27, 1998)

50.     Paragraphs 1 through 49 are incorporated by reference.

51.     The actions of Defendants Kennedy, Whitley and Crisp and other unnamed officers in the May 27, 1998 incident amounted to an unlawful intrusion into the privacy and security of the home of the Plaintiffs Jane and Billy Bailey without a warrant or other legal justification. These actions violated Jane and Billy Bailey's Fourth Amendment right to be

10

secure from unreasonable searches of their home by the government, a right that applies to the actions of the Defendants through the Fourteenth Amendment. Thus, the Defendants violated these Plaintiffs' federal civil rights while acting under color of state law, making their conduct actionable under 42 U.S.C. § 1983. The Defendants are sued under that statute in their individual capacities.

52.     As a result of that violation of his Fourth Amendment right, the Plaintiffs suffered the indignity of having their home unlawfully invaded. Billy Bailey watched as a member of his family was forcibly and violently removed from his home without legal process or justification, and both have had to deal with the impact of that unlawful conduct on their son. Further, the Defendants them attempted to make it look as though Billy Bailey had requested the arrest of his son. The plaintiffs seek compensatory damages in excess of $10,000 for the injuries they have suffered, including the loss of the sense of security in their home and for emotional distress and other compensable injuries.

53.     The actions of Kennedy and Whitley evinced a willful or wanton disregard of the rights of Jane and Billy Bailey. They seek and are entitled to punitive damages.

## FOURTH CAUSE OF ACTION
### (Violation of Jane and Billy Bailey's Article I § 20 Rights)

54.     Paragraphs 1 through 53 are incorporated by reference.

55.     The actions of Defendants Kennedy, Whitley and Crisp and other unnamed officers in the May 27, 1998 incident amounted to an unlawful intrusion into the privacy and security of the home of the Plaintiffs Jane and Billy Bailey without a warrant or other legal justification. These actions violated Jane and Billy Bailey's right under Article I § 20 of the North Carolina Constitution to be secure from unreasonable searches of their home by the government. Kennedy, Whitley and Crisp are sued in their official capacities on this claim.

11

56. As a result of that violation of their state constitutional rights, the Plaintiffs suffered the indignity of having their home unlawfully invaded. Billy Bailey watched as a member of his family was forcibly and violently removed from his home without legal process or justification, and then both have had to deal with the impact of that conduct on their son. Further, the Defendants them attempted to make it look as though Billy Bailey had requested the arrest of his son. They seek compensatory damages in excess of $10,000 for the injuries he has suffered, including the loss of the sense of security in their home and for emotional distress and other compensable injuries.

57. The actions of Kennedy and Whitley evinced a willful or wanton disregard of the rights of Jane and Billy Bailey. The seek and are entitled to punitive damages.

## FIFTH CAUSE OF ACTION (May 27, 1998, Procedural Due Process)

58. Paragraphs 1 through 57 are incorporated by reference.

59. The failure of the Defendants Kennedy and Whitley to follow proper statutory procedures before arresting Michael Bailey and presenting him for an examination has already been determined by a state court. Through that failure to follow the guiding statutes, the Defendants deprived Bailey of liberty without due process of law, a right guaranteed under the Fourteenth Amendment. The Defendants undertook these actions under color of law in their capacity as police officers for the City of Hickory, and said actions deprived Michael Bailey of protections guaranteed to him under the federal constitution, making the conduct actionable under 42 U.S.C. § 1983. They are sued in their individual capacities.

60. As a result of Kennedy and Whitley's actions, Bailey suffered and is entitled to compensatory damages for physical, psychological and emotional harm from this unlawful and violent deprivation of his liberty.

61.     The actions of the Defendants Kennedy and Whitley evinced a malicious and willful or wanton disregard of the rights of the Plaintiff.  He seeks and is entitled to punitive damages.

## SIXTH CAUSE OF ACTION  (May 27, 1998, Substantive Due Process)

62.     Paragraphs 1 through 61 are incorporated by reference.

63.     The actions of Defendant Kennedy in making false verbal statements and false entries upon legal documents in order to procure Bailey's commitment was conduct that exceeds the bounds tolerated by civilized society and shocks the conscience and constitutes a violation of Bailey's right to substantive due process, as guaranteed by the Fourteenth Amendment. Defendant Kennedy undertook these actions under color of law in his capacity as a police officer for the City of Hickory, and said actions deprived Michael Bailey of protections guaranteed to him under the federal constitution, making his conduct actionable under 42 U.S.C. § 1983.

64.     As a result of Kennedy's actions, Bailey suffered, and is entitled to compensatory damages for, physical, psychological and emotional harm from unlawful deprivation of liberty as well as the inability now to work in his accustomed occupation.

65.     The actions of the Defendant Kennedy were fraudulent and evinced a malicious and willful or wanton disregard of the rights of the Plaintiff.  He seeks and is entitled to punitive damages.

## SEVENTH CAUSE OF ACTION  (May 27, 1998, Gross Negligence)

66.     Paragraphs 1 through 65 are incorporated by reference.

67.     The actions of Defendants Kennedy, Whitley, Crisp and others in securing Michael Bailey's arrest amounted to gross negligence on the part Defendants in the performance of the duties of their office.  The Defendants acted without reasonable care in securing the arrest

of the Plaintiff and proximately caused foreseeable, severe injury to Plaintiff. Their actions evinced reckless disregard for the safety and well being of Plaintiff.

68. The City of Hickory is liable for the gross negligence of these officers as *respondeat superior*. It has purchased insurance that covers this claim and waives any immunity that might otherwise apply to the City or its agents.

69. As a result of their gross negligence, the Plaintiff suffered serious physical and emotional and substantial disruption of his life, including the loss of wages and income. He seeks compensatory damages in excess of $10,000.00.

70. The actions of the Defendants Kennedy, Whitley and Crisp displayed wanton disregard of the rights of the Plaintiff. He seeks and is entitled to punitive damages.

**EIGHTH CAUSE OF ACTION (September 3, 1998, Trespass by a Public Officer)**

71. Paragraphs 1 through 70 are incorporated by reference.

72. The actions of Defendant Kennedy on September 3, 1998 constituted trespass by a public official. Kennedy committed false arrest when he seized and detained Michael Bailey without a warrant and without probable cause. The Defendant Kennedy also committed assault and battery upon the plaintiff, both by falsely arresting him and by aggressively attacking and then applying wholly unnecessary and excessive force in the arrest. The actions of the Defendant Kennedy in making the arrest and using such force were malicious and corrupt. Kennedy, Whitley and Crisp then further assaulted the Plaintiff with menacing comments and threats, placing him in fear if imminent bodily harm. Defendants Kennedy and Crisp then beat the Plaintiff maliciously while he was in custody at the Hickory Police Department. Following this beating, both Kennedy and Crisp made additional menacing threats.

14

73.     All of these actions were taken within the scope of these Defendants' employment by the City of Hickory, and the City is sued for their conduct as *respondeat superior*.

74.     As a direct result of the trespass by these defendants, the Plaintiff suffered loss of liberty, and severe physical and emotional injury. He seeks compensatory damages in excess of $10,000.

75.     The actions of the Defendants Kennedy and Crisp evinced a malicious and willful or wanton disregard of the rights of the Plaintiff. He seeks and is entitled to punitive damages.

## NINTH CAUSE OF ACTION (September 3, 1998, Malicious Prosecution)

76.     Paragraphs 1 through 75 are incorporated by reference.

77.     The actions of Defendant Kennedy on September 3, 1998, constituted malicious prosecution. The Defendant initiated criminal proceedings against Plaintiff without probable cause and with malice and the prosecution was terminated in Plaintiff's favor.

78.     As a result of Defendant's unlawful conduct, Plaintiff was subjected to an unwarranted criminal prosecution, causing him emotional distress, the cost of counsel and other compensable injuries proximately caused by Kennedy's malicious conduct. Plaintiff seeks compensatory damages in excess of $10,000.

79.     All of these actions were taken within the scope of these Defendants' employment by the City of Hickory, and the City is sued for their conduct as *respondeat superior*.

80.     Defendant Kennedy's actions evinced a malicious and willful or wanton disregard of Plaintiff's rights. He seeks and is entitled to punitive damages.

### JURY DEMAND

81.     Plaintiffs respectfully request that this matter be tried before a jury of their peers.

## PRAYER FOR RELIEF

82.    Wherefore, upon a trial of this matter, Plaintiffs prays that the Court grant them the following relief:

a.    Compensatory damages for each Plaintiff in excess of $10,000.00;

b.    Punitive Damages for each Plaintiff to the extent allowed by law;

c.    The cost of this action, including a reasonable attorney's fee under 42 U.S.C. § 1988; and

d.    Any other relief this Court deems just and necessary.

Respectfully submitted, this 12th day of January, 2000.

S. LUKE LARGESS
N.C. Bar Number 17486
Ferguson, Stein, Wallas, Adkins,
   Gresham & Sumter, P.A.
Suite 300 Park Plaza Building
741 Kenilworth Avenue (28204)
P. O. Box 36486
Charlotte, North Carolina 28236-6486
(704) 375-8461
Counsel for Plaintiffs

16